```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
DERROLD V. MADISON, now known as,          :
DIALLORAFIK A. MADISON, pro se,            :
                                           :
                        Petitioner,        :
                                           :         MEMORANDUM AND ORDER
            -against-                      :         09-CV-337 (DLI)
                                           :
WILLIAM F. HULIHAN, Superintendent,        :
                                           :
                        Respondent.        :
-----------------------------------------------------------------x
```

**DORA L. IRIZARRY, United States District Judge:**

On January 20, 2009, *pro se*[1] petitioner Derrold V. Madison, *now known as* DialloRafik A. Madison ("Petitioner"), filed the instant writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 1994 conviction in the Supreme Court of New York, Kings County. This court previously determined Petitioner's conviction became final on or about March 10, 1997. *See Madison v. Hulihan*, 2009 WL 749994, at *1 (E.D.N.Y. Mar. 17, 2009) ("*Madison I*"). Accordingly, the court determined the petition was likely time-barred, as it was filed almost twelve years after the expiration of the one-year statute of limitations under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Id.* (citing 28 U.S.C. § 2244(d)). Petitioner asserted he was entitled to statutory tolling of the AEDPA's limitation period because he filed certain post-conviction motions. *Id.* at *2. The court denied Petitioner's claim. *Id.* Petitioner also asserted he was entitled to equitable tolling because he allegedly suffered from a mental illness. *See id.* at *3. Because Petitioner failed to offer evidence substantiating the nature

---

[1] The court is mindful that *pro se* submissions, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Thus, the court interprets the petition "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons,* 470 F. 3d 471, 474 (2d Cir. 2006) (emphasis omitted).

of his mental illness and demonstrating why the alleged mental illness precluded him from timely filing a petition, and in deference to his *pro* se status, the court directed Petitioner to show cause, by written affirmation, why the petition should not be dismissed as untimely. *Id*. Specifically, the court instructed Petitioner "that it is not sufficient to allege simply that he suffers from a mental illness" but that he "must demonstrate a causal relationship between his mental illness and the lateness of his filing." *Id.*

For the reasons set forth below, after review of Petitioner's additional written affirmations, the court finds there is no basis for equitable tolling of the statute of limitations. Accordingly, the petition is dismissed as untimely under 28 U.S.C. § 2244(d)(1).

## BACKGROUND

Pursuant to the court's instruction, Petitioner submitted an affidavit dated April 14, 2009 as an addendum to his petition, claiming the deadline for his petition should be equitably tolled because: (1) he suffered from mental illnesses (Mood Disorder and Post Traumatic Stress Disorder ("PTSD")) that caused his memory of the facts the petition is predicated on to be repressed while he was also under the influence of "incapacitating drugs," and, as such, he was prevented from protecting his legal rights; (2) his mental capacity is at issue in another proceeding in the Southern District of New York;[2] (3) a state-created impediment was present

---

[2] This issue is now moot. In *Madison v. Hulihan*, 2009 WL 7028639 (S.D.N.Y. Dec. 22, 2009), *report and recommendation adopted by* 2010 WL 4258759 (S.D.N.Y. Oct. 27, 2010) ("*Madison II*"), Petitioner, on April 2, 2008, challenged his April 6, 1998 conviction for promoting prison contraband while incarcerated for the instant conviction. Petitioner's judgment of conviction became final on September 25, 1999 and the AEDPA's one year statute of limitations ended on September 25, 2000. *Id.* at *4. Because Petitioner's filing was untimely, the *Madison II* court, as in the instant matter, directed Petitioner to show cause why his petition should not be dismissed as time-barred. *Id.* at *2. There, Petitioner argued his petition should not be time-barred on the same grounds he argues in the instant petition. *Id*. The *Madison II* court concluded each of Petitioner's arguments were without merit and dismissed the petition as untimely. *Id.* at *9.

2

because the prison law library's instructions regarding the ADEPA were misleading; (4) he is actually innocent; and (5) the Suspension Clause of the United States Constitution requires an exception for actual innocence. (*See* Docket Entry No. 6, Affidavit as an Addendum, dated April 14, 2009 ("Apr. 14 Add.") ¶ 2.) Along with the Apr. 14 Add., Petitioner submitted numerous exhibits including: 1) approximately 115 pages of medical records filed under seal;[3] 2) habeas instructions and habeas writ forms from a state prison located in the Northern District of New York; and 3) affidavits from prison law librarians. (Exhs. A-H, attached to Apr. 14 Add.) Petitioner also submitted an affidavit as an addendum with attached exhibits, dated April 20, 2009, purporting to provide additional support for his actual innocence claim. (Docket Entry No. 4, Exhs. I-K, attached to Affidavit as an Addendum, dated April 20, 2009 ("Apr. 20 Add.").)

On June 3, 2009, Petitioner filed, under seal, another affidavit as an addendum with attached exhibits, including approximately 40 pages of additional medical records, in further support of his mental illness tolling argument. (Exhs. L-N, attached to Affidavit as an Addendum, dated June 3, 2009 ("June 3 Add.").) On October 29, 2010 and January 5, 2011, respectively, Petitioner again submitted affidavits as an addendum with additional exhibits in support of his actual innocence claim. (Docket Entry No. 11, Exhs. A-B, attached to Affidavit as an Addendum, dated October 29, 2010 ("Oct. 29 Add."); Docket Entry No. 12, Exhs A-C, attached to Affidavit as an Addendum, dated January 5, 2011 ("Jan. 5 Add.").)

Respondent argues Petitioner is not entitled to equitable tolling and that the petition should be dismissed as time-barred or, in the alternative, denied on the merits. (*See* Docket Entry No. 15, Respondent's Memorandum in Opposition ("R. Opp.").)

---

[3] As Petitioner's medical records were filed under seal the court refers to the records only where necessary.

3

**DISCUSSION**

I. **Equitable Tolling**

The AEDPA statute of limitations is not jurisdictional so the court may equitably toll the period. *Holland v. Florida*, ⸺ U.S. ⸺, 130 S.Ct. 2549, 2560–62 (2010). "A petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id*. at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)) (internal quotation marks omitted). The term "extraordinary" here does not refer to the uniqueness of a petitioner's circumstance, but rather to the severity of the obstacle hindering compliance with the AEDPA limitation period. *Harper v. Ercole*, 648 F. 3d 132, 137 (2d Cir. 2011) (citations omitted). Accordingly, the AEDPA limitation period may only be tolled in rare and exceptional circumstances, *Bolarinwa v. Williams*, 593 F. 3d 226, 231 (2d Cir. 2010), and where the petitioner can "demonstrate a causal relationship between the extraordinary circumstances . . . and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Id.* (quoting *Valverde v. Stinson*, 224 F. 3d 129, 134 (2d Cir. 2000)).

A. **Mental Illness**

Petitioner first argues he is entitled to equitable tolling because he suffers from mental illnesses. (*See* Apr. 14 Add. ¶¶ 2-42.) While mental illness can establish a basis for equitable tolling of a filing deadline, it does not toll a filing deadline *per se*. *Bolarinwa*, 593 F. 3d at 232. Whether equitable tolling is warranted because of mental illness "is a highly case-specific inquiry" and the petitioner seeking equitable tolling must articulate a "particularized description of how [his] condition adversely affected [his] capacity to function generally or in relationship to

4

the pursuit of [his] rights." *Id*. (citations omitted).  Thus, a petitioner must demonstrate that his "particular disability constituted an 'extraordinary circumstance' severely impairing [his] ability to comply with the filing deadline, despite [his] diligent efforts to do so." *Id.*  Accordingly, to prevail on his equitable tolling claim, Petitioner was required to show his alleged mental illness constituted an extraordinary circumstance that became an impediment prior to the expiration of the AEDPA limitation period, March 10, 1998, and that, in spite of Petitioner's diligent efforts, the alleged mental illness caused the lateness of his filing.  Petitioner has failed to make such a showing here.

Petitioner's medical records cover the years 1997-2008.  (Exhs. A-H, attached to Apr. 14 Add.; Exhs. L-N, attached to June 3 Add.)  Petitioner asserts that he suffered from PTSD, Mood Disorder, and that he was prone to incapacitation and blackouts caused by a variety of prescription medications.  (*See* Apr. 14 Add. ¶¶ 4-7.)  He further asserts that these medical conditions inhibited his ability to timely file his petition.  However, the medical records submitted by Petitioner to the court do not show he suffered from PTSD, Mood Disorder, or incapacitation and blackouts between March 10, 1997 and March 10, 1998, which is the applicable AEDPA limitation period.  As such, Petitioner has not shown that a mental illness prevented him from filing his petition before the March 10, 1998 deadline.

The first reference to PTSD does not appear in the record until August 31, 2001 in a "Core History Outpatient Report," which is over three years after the limitation period ended. (*See* Exh. A, attached to Apr. 14 Add.)  Further, the validity of the PTSD diagnosis is uncertain, as Dr. Al Shimkunas, Ph.D., noted in a December 8, 2008 report that "various clinicians who have evaluated [Petitioner] for treatment [for PTSD] have either questioned the validity of the diagnosis or flatly rejected it."  (Exh. C, attached to Apr. 14 Add.)  Dr. Shimkunas also noted

5

Petitioner reported the source of the PTSD was a "traumatic event" that occurred on October 30, 1999, which is more than two and one half years after the limitation period expired. (*Id.*) Additionally, no medical records submitted by Petitioner show he suffered from Mood Disorder or blackouts between March 10, 1997 and March 10, 1998. Accordingly, Petitioner has failed to demonstrate that he suffered from a mental illness during the one-year limitation period that would justify the equitable tolling of the filing deadline.

The records do show that, during the applicable year, Petitioner was prescribed Benadryl and Zoloft because he complained of "mental distress" and "difficulty sleeping." (Exh. A, attached to Apr. 14 Add.; Exh. L, attached to June 3 Add.) Along with his medical records, Petitioner submitted a document purporting to give patient medical advice detailing the side-effects of some of the psychotropic medications he was ingesting, including, *inter alia*, Zoloft. (Exh. M, attached to June 3 Add.) However, Petitioner fails to provide any evidence, other than his own assertions, that the psychotropic medications caused Petitioner to experience incapacitation or blackouts during the year of the limitation period. Moreover, Petitioner fails to demonstrate, as he must, a causal relationship between taking the psychotropic medications and his alleged inability to timely file his petition. *See Hizbullahankhamon v. Walker*, 255 F. 3d 65, 75 (2d Cir. 2001) (citation omitted) (noting a petitioner must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing[.]").

Petitioner's assertions that the psychotropic medications rendered him unable to comply with the AEDPA's deadline, alone, are insufficient to meet the high standard necessary to warrant equitable tolling. *See, e.g., Alaouie v. Ercole*, 2009 WL 2001741, at *3 (S.D.N.Y. July 9, 2009) (petitioner's assertion that his ingestion of Seroquel during the AEDPA's one-year time

6

period rendered him unable to timely file his petition, absent evidence that the drug's effects were severe and debilitating, was insufficient to meet the high standard necessary to justify tolling); *see also Jean-Louis v. Greiner*, 2003 WL 1807144, at *3 (S.D.N.Y. Apr. 4, 2003) (citing cases) ("The statement that petitioner takes psychotropic medication does not satisfy his burden to show that this medication left him incapacitated or otherwise unable to pursue his rights."). Accordingly, Petitioner's claim that the limitation period should be tolled owing to his purported mental illness is without merit, as Petitioner has not demonstrated he suffered from a mental illness during the applicable limitations period that rendered him unable to timely file his petition.

### B. State-Created Impediment

Petitioner next argues he is entitled to equitable tolling of the AEDPA's one-year limitation period owing to a state-created impediment. (*See* Apr. 14 Add. ¶ 2.) Specifically, Petitioner alleges that the state "affirmatively mislead" him and prevented him from timely filing his petition because the habeas forms available to him in a state prison library in the Northern District of New York contained no reference to the AEDPA's one-year statute of limitations. (*See id*. ¶¶ 45-53 (citing *Egerton v. Cockrell*, 334 F. 3d 433 (5th Cir. 2003)) (finding state-created impediment where law library did not have copy of AEDPA).) Petitioner's claim is without merit.

It is extremely rare for courts in the Second Circuit to find a state-created impediment is extraordinary enough to warrant equitable tolling. *See Artis v. Huliahn*, 2010 WL 4668926, at *4 (S.D.N.Y. Nov. 12, 2010) (noting "[t]he Second Circuit has seldom found extraordinary circumstances sufficient to warrant equitable tolling." (quoting *Adkins v. Warden,* 585 F. Supp. 2d 286, 296 (D.Conn. 2008))). A state-created impediment can warrant equitable tolling in the

rare instance where the state "effectively prohibits" the petitioner from pursuing a habeas petition. *Raynor v. Dufrain*, 28 F. Supp. 2d 896, 900 (S.D.N.Y. 1998). For example, the Second Circuit has held that the "intentional confiscation of a prisoner's habeas corpus petition and related legal papers by a corrections officer" shortly before the filing deadline constitutes an extraordinary circumstance "as a matter of law" warranting equitable tolling. *See Valverde*, 224 F. 3d at 133.

Here, however, while the forms provided to Petitioner lacked information about the AEDPA deadline, (*see* Exhs. D-E, attached to Apr. 14 Add.), Petitioner was not effectively prohibited by the state from filing his habeas petition within the limitation period, as the state took no affirmative step to prevent Petitioner from filing his petition. *See Artis*, 2010 WL 4668926, at * 4 (noting a habeas form that does not affirmatively warn of the AEDPA limitation period does not effectively prohibit a prisoner from filing a habeas petition (citing *Madison II*, 2009 WL 7028639, at *7)). Moreover, despite the lack of reference on the forms to the AEDPA statute of limitations, Petitioner, acting with reasonable diligence, could have otherwise determined the AEDPA's deadline and filed the petition before the deadline expired. *See Valverde*, 224 F. 3d at 134 ("If the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing.").

Further, to the extent Petitioner is arguing that he is entitled to equitable tolling because he was ignorant of the limitations period in light of his *pro se* status, that argument is unavailing. *See Smith v. McGinnis*, 208 F. 3d 13, 18 (2d Cir. 2000) (petitioner's *pro se* status is not an extraordinary circumstance warranting equitable tolling of the AEDPA statute of limitations);

8

*see also Romero v. Ercole*, 2009 WL 1181260, at *5 (E.D.N.Y. Apr. 30, 2009) ("[C]ourts have repeatedly held in the *habeas* context that ignorance of the law is not grounds for equitable tolling." (quoting *Ruiz v. Poole,* 566 F. Supp. 2d 336, 338 (S.D.N.Y.2008)) (internal quotation marks omitted) (italics in the original)).  Accordingly, Petitioner's claim that he is entitled to equitable tolling because of a state-created impediment is denied.

## II.    Actual Innocence

The Second Circuit has not yet determined whether the Constitution requires equitable tolling of the AEDPA's limitation period when a petitioner claims actual innocence based on newly discovered evidence.  *See Brockington v. Marshal*, 375 F. App'x 157, 158 (2d Cir. 2010) (citing *Doe v. Menefee,* 391 F. 3d 147, 161 (2d Cir. 2004)).  Accordingly, when reviewing untimely petitions in which the petitioner has asserted a claim of actual innocence, the Second Circuit has instructed district courts to determine "whether the petitioner has presented a credible claim of actual innocence before ruling on the legal issues of whether such a showing provides a basis for equitable tolling and whether the petitioner must also demonstrate that he or she pursued his or her claim with reasonable diligence."  *Doe,* 391 F. 3d at 161.

The actual innocence standard is demanding, *see id*. at 173, and requires a showing of factual innocence, not merely legal innocence.  *Murden v. Artuz*, 497 F. 3d 178, 194 (2d Cir. 2007) (citing *Doe*, 391 F. 3d at 162).  In order to demonstrate actual innocence in a collateral proceeding, "a petitioner must support his claim 'with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial.' " *Doe*, 391 F. 3d at 161 (quoting *Schlup v. Delo,* 513 U.S. 298, 324 (1995)).  This court "must determine whether the new evidence is trustworthy by considering it both on its own merits and, where appropriate, in light of the pre-existing evidence

9

in the record." *Id.* (citing *Schlup,* 513 at 327–28). In order for a petitioner to "invoke the actual innocence gateway and obtain review of the merits of his claims," the court must determine that "in light of all the evidence, it is 'more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.' " *Id.* at 162 (quoting *Schlup,* 513 U.S. at 327)); *see also Foster v. Phillips,* 326 F. App'x. 597, 598 (2d Cir. May 6, 2009) ("An actual innocence claim does not merely require a showing that a reasonable doubt exists in light of the new evidence, but rather that no reasonable juror would have found the defendant guilty." (internal quotation marks and citations omitted)).

Here, Petitioner asserts several reasons why he is actually innocent of the underlying conviction: 1) the arresting officer perjured himself under oath during Grand Jury testimony and the prosecution and court were aware of the perjury; 2) petitioner is actually innocent of a prior conviction, which conviction resulted in a sentencing enhancement in the underlying conviction; and 3) the victim perjured herself and mislead the jury about her character. These assertions, either separately or in the aggregate, do not constitute new reliable evidence that would make it more likely than not that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt. Accordingly, Petitioner's actual innocence claims are without merit.

### A.     Grand Jury Testimony

Petitioner argues he is actually innocent because the arresting officer, who also was an identification witness in this case, Police Officer Edward McGowan, allegedly testified falsely before the Grand Jury by stating he never lost sight of the alleged perpetrator while pursing him before making the arrest. (Apr. 14 Add. ¶ 55; *see also* Exh. A, Grand Jury Transcript ("J. Tr."), attached to Habeas Petition at 14-15.) Petitioner further alleges that, at a purported subsequent pretrial hearing on June 23, 1994, Officer McGowan again was asked whether he lost sight of the

perpetrator, but this time responded "Yes." (*Id.* ¶ 56.) According to Petitioner, the trial judge then shouted, "You're going to lose this case!" (Apr. 14 Add. ¶ 56; Apr. 20 Add. ¶ (j).) Petitioner thus asserts the prosecutor and court were aware the officer gave perjured testimony, but that the prosecutor attempted to withhold the June 23, 1994 transcript from Petitioner. (Apr. 14 Add. ¶¶ 61, 64.) Finally, Petitioner argues the prosecutor attempted to disguise the officer's alleged false testimony at trial by "foster[ing] a misapprehension in the jury that 'Officer McGowan lost sight of the defendant only momentarily when rounding corners.'" (*Id.* ¶¶ 60-61.) Petitioner thus suggests the combination of these circumstances constitutes new reliable evidence such that no reasonable juror would have convicted him of the crimes with which he was charged. (*Id.* ¶ 67.) Petitioner's arguments are meritless as they are largely unsupported by the record and irrelevant to whether Petitioner is actually innocent of the crimes for which he was convicted.

As an initial matter, despite Petitioner's claim, it appears from the record that no hearing took place on June 23, 1994. A hearing was set for June 23, 1994 to decide the prosecutor's application for a line-up. (*See* Oct. 29 Add., Exh. C at 5.) However, the trial court informed the prosecutor that he could make the application in writing in lieu of a hearing. (*See id.* at 6.) Accordingly, on June 23, 1994, the prosecutor chose to forgo the hearing and instead notified the trial court in writing that the prosecutor would not conduct a pre-trial line-up in the case. (*See* Exh. B1, People's Omnibus Mot., attached to R. Opp.) Because this court concludes no hearing occurred on June 23, 1994, it finds Petitioner's alleged evidence of the statements made by the trial court and Officer McGowan at the purported hearing incredible and not supportive of Petitioner's actual innocence claims. *See Doe*, 391 F. 3d at 163 (citing *Schlup*, 513 U.S. at 330) (noting the habeas court may make its own credibility determinations regarding new evidence

11

and evidence already in the record that may be thrown into doubt by the new material).

Further, while Petitioner is correct that Officer McGowan testified before the Grand Jury that he never lost sight of the perpetrator while chasing him, (J. Tr. at 14-15), the officer's statement before the Grand Jury does not constitute new reliable evidence that would support Petitioner's actual innocence claim. *See Doe*, 391 F. 3d at 161 (petitioner must support his claim with new reliable evidence such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence (quoting *Schlup*, 513 U.S. at 324)). More importantly, Officer McGowan testified, at trial, that he did briefly lose sight of the perpetrator while chasing him.[4] Accordingly, regardless of the Grand Jury testimony, the trial jury received evidence that the officer lost sight of the perpetrator while chasing him around street corners and, despite this, in light of all the other evidence presented at trial, the jury still found Petitioner guilty. Because the trial jury knew Officer McGowan momentarily lost sight of the perpetrator when it rendered the guilty verdict, Petitioner has not shown, even in light of Officer McGowan's Grand Jury testimony, that no reasonable juror would have convicted him of the crimes with which he was charged. Accordingly, Petitioner's first actual innocence claim is without merit.

B.  **Challenge to Predicate Conviction**

Petitioner also claims that, because of alleged government misconduct, he is actually innocent of a prior conviction, which resulted in an alleged unconstitutional enhancement of the sentence in his underlying conviction. (Apr. 20 Add. ¶¶ (b)-(f).) However, this claim is a

---

[4] Petitioner asserts the prosecutor attempted to disguise the officer's allegedly perjured Grand Jury testimony from the trial jury by arguing at trial that the officer only momentarily lost sight of the individual prior to making the arrest. (Apr. 14 Add. ¶¶ 60-61 (citing Trial Transcript dated September 19-21, 1994 ("Tr. T.") at 194, attached as Exh. A to R. Opp.).) Petitioner entirely misconstrues the trial transcript. It was not the prosecutor, but Petitioner's own trial counsel, who elicited from Officer McGowan, during cross examination, that the officer momentarily lost sight of the perpetrator when rounding street corners. (Tr. T. at 194.)

technical challenge to a predicate conviction that provides no new evidence to support Petitioner's claim of actual innocence of the underlying conviction. Because "actual innocence does not apply to cases in which the defendant seeks to raise a technical or legal challenge to a prior conviction," *Ethridge v. United States*, 2010 WL 2735826, at *5 (E.D.N.Y. July 9, 2010), Petitioner's second actual innocence claim is meritless.

### C.     Alleged Character Misrepresentation

Petitioner further claims actual innocence based on newly discovered evidence allegedly showing the victim of the crimes for which Petitioner was convicted misrepresented her character to the jury during her testimony. During her September 19, 1994 trial testimony, the victim stated she worked as a nanny and was employed at a production company that writes television shows for children. (*See* Tr. T. at 116-117, 143.) According to Petitioner, he has now discovered evidence showing that the victim was actually employed in the "porn industry" at the time of the trial. (*See* Oct. 29 Add. ¶¶ 3, 7-11). Petitioner has submitted copies of a variety of web pages all purporting to show that an individual, with the same name as the victim in the underlying case, was an employee of the Playboy Channel who appeared in various "erotic" movies. (Exh. B, attached to Oct. 29 Add.) Petitioner's third actual innocence claim is utterly without merit.

As an initial matter, Petitioner has not provided any evidence showing that the alleged individual in his exhibit is the same person as the alleged victim. Further, the exhibit shows the individual began her career in erotic entertainment in 1996, approximately two years after the allegedly misleading character testimony. Accordingly, even if Petitioner's allegation was true, it would be irrelevant. Finally, that the victim was allegedly employed in the erotic entertainment industry has no bearing on whether Petitioner is actually innocent of the crimes for

which he was conviction.  Petitioner has not shown that, even if the victim had misrepresented her employment, no reasonable juror would have convicted him of the crimes with which he was charged.  Accordingly, Petitioner's third actual innocence claim is without merit.

Because Petitioner has not set forth a credible actual innocence claim, the court need not address whether Petitioner is entitled to equitable tolling on this basis.  *See Doe,* 391 F. 3d at 161 (noting the question of whether the Constitution requires equitable tolling for innocence should be decided only "in a case in which the petitioner can show that, because he can demonstrate his actual innocence, he would be injured if not entitled to tolling on this basis[.]").  Accordingly, Petitioner's equitable tolling claim based on actual innocence is denied.

## CONCLUSION

For the reasons set forth above, Petitioner has failed to set forth any basis for this court to equitably toll the AEDPA one-year statute of limitations.  As such, the petition is dismissed as untimely under 28 U.S.C. § 2244(d)(1).  Petitioner is denied a certificate of appealability, as he has failed to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see* Fed. R. App. P. 22(b); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Luciadore v. New York State Div. of Parole*, 209 F. 3d 107, 112 (2d Cir. 2000).  The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal.  *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated:  Brooklyn, New York
          March 23, 2012

_____/s/_____
DORA L. IRIZARRY
United States District Judge